# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:13-CV-00091-FDW

| | |
|---|---|
| In Re: Gary Wayne McCullough, Sr., Debtor. | )<br>)<br>)<br>) |
| GARY WAYNE McCULLOUGH, SR.,<br><br>Appellant,<br><br>vs.<br><br>ELVERSON HORNE, P. HORNE, and J. HORNE,<br><br>Appellees. | )<br>)<br>)<br>)<br>)   **ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court upon the appeal of Gary Wayne McCullough, Sr., of an Order by the United States Bankruptcy Court granting Appellees Elverson Horne, P. Horne, and J. Horne's (collectively the "Hornes") Motion for Relief from Automatic Stay in the bankruptcy court pursuant to 11 U.S.C. § 362(d) (Case No. 12-32142). The Motion for Relief was first filed by the Hornes and objected to by McCullough on January 29, 2013. That motion was granted in favor of the Hornes on January 30, 2013, and McCullough's appeal followed. (Doc. No. 28). McCullough argues that the Order of Relief from Automatic Stay should not have been granted when the Chapter 13 bankruptcy proceeding was filed. For the reasons stated below, the decision of the bankruptcy court is AFFIRMED.

## BACKGROUND

The facts in this case are largely undisputed. At issue in this matter is a property

("Property") that is McCullough's principal residence located at 5004 Wilkinson Boulevard, in Charlotte, North Carolina. On March 24, 2005, McCullough executed a promissory note ("Note") in favor of the Hornes with a principal amount of $247,500. McCullough also executed and properly recorded a Deed of Trust the same day to secure the Note. (Doc. No. 3). Although McCullough contends that he paid the required payments under the Note until 2012, in the hearing on the motion it was established that McCullough actually failed to make payments since March 2011 (Doc. No. 4), and was at least 17 months behind in payments. The final foreclosure hearing was set for August 2, 2012, at which the Order of Sale designated the property to be sold on August 23, 2012. (Br. for Appellant, Doc. No. 3).

On the day of the foreclosure sale, McCullough filed for Chapter 13 bankruptcy. The bankruptcy court issued a bankruptcy plan on September 14, 2012. Under this plan, McCullough paid almost nothing to satisfy the debt owed to the Hornes. (Br. for Appellees, Doc. No. 4). The Court also notes that before the foreclosure hearing, an interested third party, J.C. Wilkinson Associates, LLC ("Wilkinson") negotiated to purchase McCullough's property. Wilkinson, however, terminated the purchase contract of allegedly $385,000 during the due diligence period. McCullough and the Hornes disagree on the fair market value of the property. McCullough alleges that the fair market value is between $327,200 and $385,000. The Hornes claim that the fair market value was $200,000. In November 2012, near the time the foreclosure was initiated, the value of the secured claim was $255,847.30.

On January 9, 2013, the Hornes filed the Motion for Relief from the Automatic Stay, which was eventually granted on January 30, 2013. The bankruptcy court granted this relief on the basis that there was no adequate protection in the property interest and the property contained no equity. (Doc. No. 28).

## STANDARD OF REVIEW

When a district court reviews a bankruptcy court's decision to lift an automatic stay, the district court acts as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law de novo. See In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992); In re Bryson Prop., XVIII, 961 F.2d 496, 499 (4th Cir. 1992), cert. denied sub nom., Bryson Prop., XVIII v. Travelers Ins. Co., 506 U.S. 866 (1992); In re Luskin's, Inc., 213 B.R. 107, 110 (D. Md. 1997). The law is well-settled that a bankruptcy court's discretionary determination on whether to lift an automatic stay will be overturned only upon a showing of abuse of that discretion. In re Luskin's, Inc., 213 B.R. at 110 (quoting Frederick County Nat'l Bank v. Lazerow, 139 B.R. 802, 804 (D. Md. 1992)); see Claughton v. Mixson, 33 F.3d 4, 5 (4th Cir. 1994) ("We will reverse a decision to lift the automatic stay 'for cause' only when an abuse of discretion has occurred.") (citing In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992)). Generally, "[a]n abuse of discretion occurs only when a bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

## ANALYSIS

McCullough's sole issue on appeal is whether the decision to lift the automatic stay was an abuse of discretion by the bankruptcy judge. The appeal turns on 11 U.S.C. § 362(d)(1) and (d)(2)(A). Under 11 U.S.C § 362(d)(1), the bankruptcy judge has the discretion to lift an automatic stay "for cause, including the lack of adequate protection of an interest in property." In addition, under 11 U.S.C § 362(d)(2), the bankruptcy judge may lift an automatic stay if "the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . ."

### A. Lack of Adequate Protection

As discussed above, relief from an automatic stay may be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). Generally, whether a property is adequately protected is determined on a case-by-case basis. In re Robbins, 964 F.2d at 345 (4th Cir. 1992). Adequate protection may be produced if the debtor makes cash payments to the person that has an interest in the property. 11 U.S.C. § 361. For example, in In re Brown, the debtor's bankruptcy plan provided full repayment of the outstanding debt on a mortgage, thus relief from an automatic stay was not granted. 428 B.R. 672 (Bankr. D. S.C. 2010). In re Brown is wholly inconsistent with the case at bar, because, unlike in In Re Brown, McCullough made only the first payment required by the bankruptcy plan and failed to make all others. Accordingly, there is not adequate protection of the Hornes' interest in McCullough's property under 11 U.S.C. § 361.

Here, McCullough's failure to make payments indicates that Hornes' interest in the Property is not adequately protected and that relief from an automatic stay may be granted. The burden of proving a lack of adequate protection is on the party moving for relief. See 11 U.S.C. § 362(g). However, once a creditor establishes a history of failing to make payments, the burden then shifts to the debtor to show why automatic relief should not be granted. See In re Taylor, 151 B.R. 646 (Bankr. E.D.N.Y. 1993).

A debtor's history of making or failing to make payments under a bankruptcy plan, as well as its history of payments under a promissory note, are both significant when determining whether there is adequate protection. For instance, in In re James River Associates, the creditor did not receive payments after filing the bankruptcy petition. 148 B.R. 790, 794 (Bankr. E.D. Va. 1992). Furthermore, the creditor had not received payments under the note for a year before

the bankruptcy petition. The court lifted the automatic stay, granting relief to the creditor. Id.; see also In re Davis, 64 B.R. 358 (Bankr. S.D.N.Y. 1986) (finding that debtor's failure to make post-petition mortgage payments was sufficient to permit the lifting of an automatic stay); In re Frascatore, 33 B.R. 687 (Bankr. E.D. Pa. 1983) (granting relief from an automatic stay due to debtor's failure to make two monthly payments during bankruptcy); In re Anderson, 21 B.R. 443 (Bankr. N.D. Ga. 1981) (granting relief from an automatic stay due to the debtor's failure to make payments on the mortgage 15 months prior to bankruptcy).

In the present case, the Hornes received only one payment from McCullough after the bankruptcy petition was filed. In addition, the Hornes had not received payments for approximately 17 months prior to McCullough's filing for bankruptcy. In both In re James River Associates and the present case, the debtors consistently failed to make payments under the respective bankruptcy plans and promissory notes. As courts have consistently found that a debtor-creditor relationship with a history of non-payments is sufficient to show a lack of adequate protection, and as McCullough and the Hornes' relationship specifically displays this type of relationship history, it is clear that there is a lack of adequate protection for the Property in this case.

However, the Court's analysis does not end here. The Court may also consider a lack of insurance on the property, which is another indication that the property interest is not adequately protected. For example, in In re Barrows, the court considered the failure to maintain insurance on a property as a significant factor when finding that there was a lack of adequate protection. 15 B.R. 338, 341 (Bankr. M.D. Pa. 1981); see also In re American Restaurants Mgmt. Corp., 8 B.R. 596 (Bankr. S.D. Fla. 1981) (failure to pay insurance premiums was grounds for finding lack of adequate protection). Similarly to those cases, McCullough never obtained insurance on

the Property even after demands to do so were made by the Hornes. (Br. for Appellees, Doc. No. 4, p. 4). Since McCullough did not obtain insurance, the bankruptcy court correctly considered the failure to maintain insurance as an important factor in favor of determining that the property was not adequately protected.

Accordingly, McCullough not only failed to make payments but also failed to obtain an insurance policy on the property. As such, there does not appear to be any reason why relief from automatic stay was improperly granted. Therefore, the bankruptcy court correctly decided to grant relief on the basis that the Hornes' property interest was not adequately protected.

### B. Insufficient Equity

A debtor's insufficient equity in a property provides another circumstance that permits a bankruptcy judge to lift an automatic stay. 11 U.S.C § 362(d)(2). Insufficient equity is inextricably linked to a lack of adequate protection. Thus, if adequate protection is not provided by the debtor, there will also generally be a lack of equity in the property. See In re Ebersole, 440 B.R. 690, 698 (Bankr. W.D. Va. 2010) (stating that 11 U.S.C. §§ 362(d)(1)-(2) both involve the issue of equity). Under 11 U.S.C. § 362(d)(2), relief from an automatic stay may be granted if "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." Generally, the party moving for relief has the initial burden of proof regarding an issue involved with the excess or lack of equity. 11 U.S.C. § 362(g).

Excess equity exists when the value of the property is worth more than the debt owed. See In re Ebersole, 440 B.R. at 699. Accordingly, no equity exists when the value of the property is worth less than the debt owed. In In re Ebersole, for instance, the court found that no equity existed in the property at issue because the debt owed to secured creditors was greater than the value of the property. Id.

Similarly, in the current case, the value of the property does not exceed the debt owed by McCullough. The Hornes displayed substantial evidence establishing the lack of equity in the Property. The only bidder on the Property were the Hornes, who bid $233,368.42. (Doc. No. 4, p. 4). This was the amount owed by McCullough to the Hornes at the time of the bid. Although McCullough claims that Wilkinson, a third party bidder, was willing to pay more than the Hornes, Wilkinson terminated the purchase contract. (Hr'g Tr. p. 7). McCullough cannot contend that there was excess equity in the property based on the price of an alleged purchase contract that was eventually terminated. Thus, the greatest possible value of the property at the time of the foreclosure was the Hornes' bid. (Id.) This value did not exceed the debt owed, therefore, there was no equity in the property.

In addition, McCullough admitted that if there was any equity in the property at all, there was very little equity. (Hr'g Tr. p. 11-12; Doc. No. 4). This is unlike In re Ebersole, in which a creditor admitted it had oversecured its own debt, which was sufficient to show excess equity in a property. 440 B.R. at 698. Here, McCullough conceded that the Hornes were undersecured when he said "if there is equity, there's very little equity in the property." (Hr'g Tr. p. 11-12; Doc. No. 4). If the creditor can admit there is excess equity in the property, a debtor may admit there is no excess equity or insufficient equity in the property. Accordingly, the admission by McCullough stating that there was no equity in the property establishes proper grounds for relief under 11 U.S.C. § 362(d)(2)(A).

**C. Necessity of Property to an Effective Reorganization**

According to 11 U.S.C. § 362(d)(2)(B), relief from an automatic stay may be granted if a property is not necessary to an effective reorganization. McCullough does not contend that the property was necessary to an effective reorganization, thus, there is no applicable argument that

relief from an automatic stay was improper under 11 U.S.C. § 362(d)(2)(B). This also indicates that the relief from the automatic stay was properly granted, and that the bankruptcy court did not abuse its discretion in granting relief.

### D. In Re Robbins Factors

In addition to the direct analysis of the statutory law above, the factors below set out in In re Robbins, help determine whether the bankruptcy court abused is discretion when granting relief from an automatic stay.

> The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

In re Robbins, 964 F.2d 342.

Turning to the first factor, claims governed by state law do not necessarily require bankruptcy court's expertise. In re Robbins, 964 F.2d at 345. For instance, equitable distribution disputes constitute "a category of cases in which the state courts have a special expertise and for which the federal courts owe significant deference." Id. Here, foreclosure is routinely a state court proceeding and this deference is appropriate. Accordingly, the bankruptcy court in the present case was soundly within its discretion when granting relief from the automatic stay.

Next, principles of judicial economy and efficiency favor providing relief from the automatic stay in this case. In re Wiencko, 99 F. App'x 466, 467 (4th Cir. 2004). Although In re

Wiencko involves retroactively annulling an automatic stay, the same judicial efficiency principles apply here to granting relief from the automatic stay. For instance, automatic stays may cause costly and lengthy litigation. Id. at 468; see also In re Bennett, 31 B.R. 463, 465 (Bankr. E.D.N.C. 2007) (finding that not providing relief from the automatic stay would increase fees and costs). Costly litigation, however, may be avoided when an automatic stay is lifted because relief allows creditors to liquidate their claims against debtors. Kadlecek v. Schwank USA, Inc., 488 B.R. 336, 342 (M.D.N.C. 2013). In the current case, lifting the automatic stay will allow the Hornes to liquidate their claims against McCullough, as well as reduce any costs and fees related to further litigation. Therefore, providing relief from the automatic stay will promote judicial efficiency, as well as minimize interference with the bankruptcy case because the relief minimizes the litigation required in bankruptcy court. This factor also indicates the bankruptcy court did not abuse its discretion.

In addition, the protection that the bankruptcy estate's rights and the other creditor's rights receive without an automatic stay helps determine whether the bankruptcy court abused its discretion. McCullough argues that his rights will not be protected because there is excess equity in the property, which would mean that the bankruptcy court should have denied the relief from the automatic stay. As discussed above, McCullough is incorrect, since there appears to be no equity in the property. Also, the Order required the Hornes to pay any excess proceeds from the foreclosure sale, even furthering the protection of McCullough's rights. (Doc. No. 1). Accordingly, granting relief was not an abuse of discretion by the bankruptcy judge.

Finally, the order granting relief from automatic stay, which allowed the Hornes to commence an action to recover the debt owed did not harm other creditors. Here, the only creditors are the Hornes, the Mecklenburg County Tax Collector, and the City of Charlotte

Billing Center. According to the Hornes, granting the relief from the automatic stay could allow all creditors to be paid in full. Thus, the bankruptcy estate and other creditor's rights were not harmed when relief from automatic stay was granted. Because the current case did not require the bankruptcy court's expertise, judicial efficiency is promoted by granting relief from the automatic stay, and neither the bankruptcy estate nor other creditors should be harmed by the relief, the Court find no abuse of discretion by the bankruptcy court.

## CONCLUSION

For the reasons stated above, this Court finds that the bankruptcy court did not abuse its discretion when granting relief from the automatic stay. The facts surrounding the appeal display that there was no adequate protection in the property interest, there was insufficient equity in the Property, and that no issue was made that the Property was necessary for an effective reorganization. These factors, combined with those set forth in In re Robinson, all make clear that the bankruptcy court did not abuse its discretion in granting relief from the automatic stay. Accordingly, the decision of the bankruptcy court to grant relief from the automatic stay is AFFIRMED. The Clerk's Office is respectfully directed to CLOSE the case.

IT IS SO ORDERED.

Signed: July 10, 2013

Frank D. Whitney
Chief United States District Judge